IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JEFFREY L. MCCURRY, ) | Civil Action No.: 4:09-1727-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **I. JURISDICTION**

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## **II. PROCEDURAL HISTORY**

The plaintiff, Jeffrey McCurry, filed an application for DIB and SSI on January 5, 2006, alleging a disability onset date of January 4, 2006. (Tr. 9). Plaintiff requested a hearing before an administrative law judge (ALJ) after his claim was denied initially and on reconsideration. A hearing was held on December 9, 2008, at which plaintiff appeared with counsel, and testified. A vocational expert also testified at the hearing. (Tr. 19-48). The ALJ issued a decision on February 9, 2009, finding that plaintiff was not disabled because he could perform a limited range of sedentary work.

(Tr. 14). As the Appeals Council denied plaintiff's subsequent request for review of the ALJ's decision (Tr. 6-8), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981.

## III. FACTUAL BACKGROUND

The plaintiff, Jeffrey L. McCurry, was born on September 2, 1977, and was 31 years old on the date of the administrative hearing before the ALJ. (Tr. 23). Plaintiff testified that he completed the ninth grade. (Tr. 24). Plaintiff has past relevant work as a industrial cleaner, pizza cook, forklift operator, textile machine operator, sheetrock hanger, meat wrapper, and an injection molding machine operator. (Tr. 17).

By way of history, plaintiff underwent lumbar fusion at the L5-SI level of his spine with hardware including pedicle screw fixation due to injuries to his back in 1996. However, in June 2005, plaintiff asserts he was bending over at work and felt increased pain in his lower back. Further, plaintiff testified that he has had two reconstructive surgeries on his left arm several years ago but still has pain in his left arm and can lift very little weight. (Tr. 29-30). Plaintiff also complains of left ankle pain and leg pain stemming from his back and damaged nerves. (Tr. 30-31).

Both parties have set out a detailed medical history in their briefs. Thus, the medical record will not be repeated herein.

## IV. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following, quoted verbatim:

(1) Did the Administrative Law Judge ("ALJ") err by mischaracterizing the evidence from the hearing in making

2

his determination that the Claimant's complaints of pain were not credible?

(2) Did the Administrative Law Judge ("ALJ") err by not properly evaluating the disabling effects of claimant's chronic pain as the result of the combined effects of his degenerative disc disease, muscle spasms, past history of two elbow surgeries, and broken talus?

(3) Did the Administrative Law Judge ("ALJ") err by not properly evaluating the expert opinion of Claimant's treating physicians (including a family physician, a pain management specialist and an orthopedist, the latter two hired to evaluate the Claimant by the Worker's Compensation carrier), who all opined that Claimant has been totally disabled as a result of his degenerative disc disease and muscle spasm?

(Plaintiff's brief).

In his decision of February 9, 2009, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through at least the date of this decision.

2. The claimant has not engaged in substantial gainful activity since January 4, 2006, the alleged onset date (20 CFR 404.1571 et seq. And 416.971 et seq.).

3. The claimant has the following severe impairment: Degenerative Disc Disease (20 CFR 404.1521 et seq. and 416.921 et seq.).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can lift ten pounds occasionally, stand or walk for approximately two hours and sit for approximately six hours out of an eight hour day with normal breaks, can

|     | occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can occasionally stoop, and must avoid concentrated exposure to unprotected heights and moving machine parts. |
| --- | --- |
| 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| 7. | The claimant was born on September 2, 1977, and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963). |
| 8. | The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969,and 416.969(a). |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(Tr. 11-18).

The Commissioner argues that substantial evidence supports the ALJ's decision that plaintiff's subjective complaints of disabling limitations were not fully credible, and that the ALJ adequately explained the basis of his findings as to plaintiff's credibility. The Commissioner asserts that the ALJ adequately summarized the evidence of record, included all of plaitnif's credible limitations in his residual functional capacity assessment, and gave valid reasons for assigning little weight to the opinions of Drs. Bogg and Schwartz.

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review

of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a.. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## V. PLAINTIFF'S SPECIFIC ARGUMENTS

**Treating and evaluating physicians' opinions.**

Plaintiff argues that the ALJ failed to properly assess the opinions of his treating and evaluating physicians as required by 20 C.F.R. § 404.1527(d)(1)-(6), SSR 96-2p, and SSR 96- 5p. The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(d)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992).

The Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) ( per curiam ). A treating physician's opinion is evaluated and weighed pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the

7

treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, 20 C.F.R. § 404.1527(d)(2) states: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96-2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

The doctors' opinions in question in this case are as follows: (1) the opinion of plaintiff's treating orthopaedist hired by the Worker's Compensation carrier to evaluate and treat plaintiff, Dr. Scott, who opined that plaintiff "is capable of only sedentary workplace activities and that he would have difficulty performing these on a full-time basis." This opinion was expressed in April 2007. (Tr. 340); (2) the opinion of plaintiff's treating family physician, Dr. Chris Boggs, who opined that plaintiff had significant pain which would increase greatly with walking, standing, bending, stooping or moving extremities and that there would be significant side effects from medications that "can be expected to limit the effectiveness of work duties or the performance of. . . .everyday tasks." Dr. Boggs further stated that plaintiff "will need long term narcotics; he is unemployable." (Tr. 313-14); (3) the opinion of plaintiff's treating psychiatrist appointed by the Worker's Compensation carrier, Dr. Robert G. Schwartz, who opined that plaintiff's pain would distract him from adequate performance of daily activities of work, that activities greatly increased plaintiff's pain, and although there could be improvement, pain would always be a significant element. Dr. Schwartz opined that

8

plaintiff's leg and back pain would not allow plaintiff to stay on task for two hours without unscheduled breaks, that the plaintiff would need extra rest breaks during the workday and would miss more than two days a month from increased pain, plaintiff would have to rest in a reclining chair for 30 minutes at a time every two to three hours, and could sit only 3-5 hours a days and walk only two hours each per day, and could not perform bending activities. (Tr. 356-47).

Plaintiff argues that it was clearly erroneous for the ALJ to reject Dr. Boggs' and Dr. Schwartz's opinions on the basis that "their opinions were unsupported by objective medical evidence, rely heavily upon the subjective complaints of the Claimant who I have found to be less than fully credible, and are inconsistent with the claimant's testimony regarding his activities of daily living." (Tr. 16). Further, plaintiff argues the ALJ erred by completely ignoring Dr. Scott's opinion. Plaintiff asserts that all three opinions were based on objective medical evidence, imaging confirming facet arthropthy and significant disc bulging above the original fusion site, EMG/NCV confirmation of radiculopathy and sensory neuropathy, and consistency in the plaintiffs complaint of pain, since well before the alleged onset date. Plaintiff argues that all three opinions are consistent with plaintiff's statement that he does what he can in the way of household activities five or ten minutes at a time, tries to do things with his children, and can play golf on a good day. Plaintiff argues that he presents with different intensity of symptoms on different days, "which is what would be expected from a credible patient."(Plaintiff's brief, p. 24).

The Commissioner concedes that the ALJ did not address Dr. Scott's opinion but argues it was harmless error. The Commissioner contends the error was harmless because Dr. Scott stated plaintiff was limited to sedentary work activities and "would have difficulty performing these on a full-time basis (Tr. 340)." (Brief, p. 19). Therefore, defendant argues that Dr. Scott did not state

9

plaintiff was unable to perform full-time work, only that he would have difficulty doing so, and his opinion that plaintiff was limited to sedentary work was consistent with the ALJ's decision.

To accept the Commissioner's attenuated harmless error argument would require the court to find that Dr. Scott opined that plaintiff could perform sedentary work in the workplace on a full time basis. However, Dr. Scott stated that even though he felt plaintiff was capable of only performing sedentary work, plaintiff "would have difficulty performing these on a full-time basis." Therefore, this is not what the ALJ concluded. "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)(citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)("This court does not find facts or try the case de novo when reviewing disability determinations.").

A review of the record reveals the following conclusion by the ALJ with regard to the treating physician's opinion:

> As for the opinion evidence, I gave the greatest weight to the opinion of consultative examiner Dr. W. Russell Rowland as to the claimant's physical limitations and the opinions of treating physicians Dr. Carl H. Jones, and State consultants Drs. Xanthia Harkness and Lisa Varner, as to the claimant's mental impairments as previously discussed. In addition, I gave some weight to the opinions of State consultants Drs. Dale Van Slooten and Hugh Clarke, although in giving the claimant some benefit of the doubt as to his limitations, I did not adopt their opinions that the claimant retained the residual functional capacity to perform work at the light exertional level. I gave little weight to the opinions of Drs. Chris Boggs and Dr. Robert Schwartz, who place the claimant's residual functional capacity at a level substantial less than sedentary, because their opinions were unsupported by objective medical evidence, rely heavily upon the subjective complaints of the claimant who I have found to be less than fully credible, and are inconsistent with the claimant's testimony regarding his activities or daily living.

(Tr. 16).

The ALJ's decision does not properly assess the opinions of plaintiff's treating physicians with regard to plaintiff's physical limitations. The ALJ did not mention nor discuss Dr. Scott's opinion as to plaintiff's functional limitations and his prognosis for returning to full time work. Dr. Scott is plaintiff's treating orthopaedic surgeon/specialist not a one time consultative physician. In fact, the ALJ never mentioned Dr. Scott at any point in his decision nor the medical exhibits that reflect his treatment and assessment of the plaintiff. Dr. Scott stated that plaintiff continues to have considerable back and leg pain and marked restrictions of activities. As the ALJ has not explained the weight he gave to Dr. Scott's medical opinion, the Court does not know if Dr. Scott's opinion was even considered by the ALJ. Furthermore, Dr. Scott's opinion appears to give support to Dr. Schwartz's and Dr. Boggs' opinions with regard to plaintiff's ability to perform gainful employment. The ALJ did not give weight to Dr. Boggs' and Dr. Schwartz's opinions finding they were not supported by objective medical evidence. Instead the ALJ relied on the opinion of one time consultative family physician Dr. Rowland. Dr. Rowland's evaluation was conducted on June 27, 2006, more than a year prior to the treatment and evaluations of his treating physicians and prior to the CT scan in December 2006, which revealed degenerative changes at L4-5 with large broad based disc bulging, facet arthropathy, and posterior element thickening creating bilateral neural forminal narrowing. Additionally, Dr. Rowlands' evaluation was also prior to the X-rays of the lumbar spine in August 2007, which revealed discogenic degenerative changes, joint space narrowing at L5-S1, and post surgical changes with mild disc space narrowing at L5-S1. Dr. Boggs stated that plaintiff was "unemployable." Dr. Schwartz opined that the pain in plaintiff's back and hips will limit plaintiff to low bending and standing no more than 2 hours, walking no more than 2 hours, and sitting no more

than 3-5 hours and that plaintiff will have to lie and rest during the course of the workday. An EMG was done on plaintiff's lower extremities in September 2007, and x-rays of the lumbar spine performed in August 2007, all subsequent to Dr. Rowland's report that the ALJ relied upon. The ALJ did not mention Dr. Scott, the treating orthopaedist, in his decision and did not fully discuss the opinion of Dr. Chris Boggs other than to state that he gave little weight to it because it was "unsupported by objective medical evidence"and relied upon plaintiff's subjective complaints. Dr. Boggs' completed a "Clinical Assessment of Pain" and physical capacities evaluation in May 2007. Dr. Boggs indicated on the assessment that plaintiff's "pain is present to such an extent as to be distracting to adequate performance of daily activities or work." Dr. Boggs further indicated that activities such as standing, walking, bending, stooping, moving of his extremities will result in "greatly increased pain is likely to occur and to such a degree as to cause distraction from the tasks or even total abandonment of the task." Dr. Boggs further assessed that medication will have significant side effects and can limit the effectiveness of work duties or the performance of everyday tasks. Dr. Boggs concluded that "patient will be so limited that he is unemployable." (Tr. 313-315). Moreover, the record is full of notations by his physicians concerning bilateral leg pain. (For example, see tr. 305). Randy Adams, the VE hired by the Worker's Compensation carrier to evaluate plaintiff, found that plaintiff was disabled after submitting a detailed report which the ALJ did not mention in his decision. (See Tr. 180-187). Therefore, it is not possible for the Court to conduct a proper review of the record to determine if there was substantial evidence to support the unfavorable decision based on an improper analysis of the treating physicians' opinions. It is not clear if the ALJ simply disregarded Dr. Scott's opinions and medical records or if he did not consider them at all. It is not clear what weight if any the ALJ placed on Dr. Boggs' reports and assessment. As a result of

the ALJ's failure to properly explain his assessment of plaintiff's treating orthopaedist's opinion, the court is unable to ascertain whether the Commissioner's decision is supported by substantial evidence. Furthermore, based on a review of the entire record, the undersigned finds that the ALJ did not conduct a proper analysis as to the treating physician's opinions, Dr. Boggs and Dr. Schwartz, with regard to plaintiff's physical limitations. Therefore, this case is remanded for the ALJ to reconsider the opinions of Dr. Scott, Dr. Boggs, and Dr. Schwartz in accordance with 20 C.F.R. §§ 404.1527(d)(2) (i-ii) and (d)(3)-(5) and Ruling 96-2. The requirement that an ALJ must give specific reasons for discounting a treating physician's testimony is well-established. The Agency has ruled that "the notice of the determination or decision . . . must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p. The undersigned cannot address the remaining issues until the ALJ conducts a proper analysis of the treating physician's opinions with regard to plaintiff's physical limitations. Once the ALJ conducts a proper analysis with respect to the treating physicians' opinions, he should reassess plaintiff's credibility, combination of impairments, and Residual Functional Capacity for a proper review.

## VI. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on a barren record devoid of the appropriate administrative analysis.

Accordingly, IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 29, 2010
Florence, South Carolina